IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> KENNETH JOHN ARCAND, <br><br> Defendant. | Cause No. CR 05-88-GF-BMM <br><br><br> SECOND AMENDED ORDER |

## INTRODUCTION

Defendant Kenneth John Arcand ("Arcand") filed a motion to appoint counsel for his motion to reduce his sentence. (Doc. 137.) Arcand's counsel filed a supplemental motion for compassionate release on October 16, 2024. (Doc. 153.) Arcand argues that extraordinary and compelling reasons warrant a reduction in sentence, including his long sentence, his youth at the time of the offense, his health problems, his family circumstances, and his rehabilitative strides. (Doc. 153 at 13.) The Government recommends reducing Arcand's sentence to time served followed by five years' supervised release. (Doc. 154.)

## FACTUAL BACKGROUND

Arcand and his codefendant and wife, Bobbi Jo Wing, set fire to their home and garage during Wing's birthday party after a longstanding family disagreement about the home's ownership escalated. (Doc. 153 at 8.) Wing and Arcand believed

1

that Wing's cousin, Angel Denny, had left the party earlier in the evening. (Doc. 153 at 6.) After Wing and Arcand set the house on fire, they learned that Denny had passed out in a back room. (Doc. 153 at 8.) Arcand and others present at the party attempted to rescue Denny. (*Id.*) They were unsuccessful, and Denny died in the fire. (*Id.*)

The Government charged Wing and Arcand with first degree murder in violation of 18 U.S.C. §§ 1153(a) and 1111. (Doc. 1.) The Superseding Indictment added a second charge of arson in violation of 18 U.S.C. § 81. (Doc. 43.) Wing and Arcand proceeded with separate trials for each charge. (Doc. 63.) A jury found Wing and Arcand guilty of first degree murder during the commission of arson. (Doc. 1; Doc. 73; Doc. 74.) The Court sentenced Wing and Arcand to life in prison on February 15, 2006. (Doc. 92; Doc. 91.) Arcand is currently incarcerated at FCI Sheridan. Inmate Locator, https://www.bop.gov/inmateloc (accessed November 4, 2024).

## DISCUSSION

Arcand has filed a motion for compassionate release pursuant to 18 U.S.C. § 3582. Arcand contends that extraordinary and compelling reasons exist for reducing Arcand's sentence and that the § 3553(a) factors support such a reduction. The Government responded to the motion to clarify the record regarding its charging

decision but requested that the Court reduce Arcand's sentence to time served followed by five years' supervised release. (Doc. 154 at 2.) The Court will grant Arcand's motion.

I.   **Motion for Compassionate Release**

   A.   **Availability of Relief Under 18 U.S.C. § 3582**

The First Step Act amended the United States Code to "promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)). The Court may modify a term of imprisonment upon motion of a defendant if the Court finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must consider the factors set forth in 18 U.S.C. § 3553(a) ("§ 3553(a)"), and whether the reduction proves "consistent with applicable policy statements issued by the Sentencing Commission" when the Court is considering the reduction of a defendant's term of imprisonment. *Brown*, 411 F. Supp. 3d at 448 (citing 18 U.S.C. § 3582(c)(1)(A)).

Congress has not defined the circumstances that rise to the level of "extraordinary and compelling," except to say that "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t); *Brown*, 411 F. Supp. 3d at 448. The law instead directs the United States Sentencing Commission ("USSC") to issue a policy

statement describing "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  28 U.S.C. § 994(t); *United States v. Aruda*, 993 F.3d 797, 800 (9th Cir. 2021).

Section 1B1.13 of the United States Sentencing Guidelines ("USSG"), titled Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) ("Policy Statement"), previously only provided a policy statement for motions filed by the BOP director.  Amendments to USSG § 1B1.13 took effect on November 1, 2023. "The amendment revises §1B1.13(a) to reflect that a defendant is now authorized to file a motion under 18 U.S.C. § 3582(c)(1)(A), making the policy statement applicable to both defendant-filed and BOP-filed motions."  USSC, Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index, at 7, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf.

Section 1B1.13(b) outlines several categories of circumstances that constitute extraordinary and compelling reasons for reducing a defendant's sentence.  USSG § 1B1.13(b).  These categories include the following: (1) medical circumstances; (2) advanced age of the defendant; (3) family circumstances; (4) the defendant was a victim of abuse while incarcerated; and (5) unusually long sentences.  USSG §

4

1B1.13(b). Section 1B1.13(b)(5) further provides a catchall category where "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the [other described reasons], are similar in gravity to [the other described reasons]." USSG § 1B1.13(b)(5). The USSC established the catchall "other reasons" provision to acknowledge that "what circumstances or combination of circumstances are sufficiently extraordinary and compelling to warrant a reduction in sentence is best provided by reviewing courts, rather than through an effort by the Commission to predict and specify in advance all of the grounds on which relief may be appropriate." USSC, Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index, at 10.

### B. Exhaustion of Remedies

Arcand submitted a request for compassionate release to the warden of the facility in which Arcand is incarcerated on December 18, 2023. (Doc. 137-1.) The BOP failed to respond to Arcand's request. (Doc. 137 at 2.) A defendant has exhausted his administrative remedies if 30 days have passed from the receipt of the request by the warden of the defendant's facility without response. 18 U.S.C. § 3582(c)(1)(A). Arcand appropriately exhausted his administrative remedies before filing his motion for compassionate release.

### C.     Extraordinary and Compelling Reasons

Arcand raises his unusually long sentence, his youth at the time of the crime, his medical circumstances, his family circumstances, and his significant rehabilitative efforts during his incarceration as grounds supporting a reduction of Arcand's sentence to time served.

#### i.     Unusually Long Sentence

Section 1B1.13(b)(6) of the USSG provides that extraordinary and compelling reasons may exist where the defendant received an unusually long sentence, the defendant has served at least ten years, and a change in the law has occurred. USSG 1B1.13(b)(6). The change in the law must "produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Id.* In conjunction with this provision, the Court maintains "broad discretion . . . to consider a wide array of extraordinary and compelling justifications for release." USSG § 1B1.13(b)(5).

The Government acknowledges that at the time of Arcand's offense, the Department of Justice's policy, known as the "most serious readily provable charge," required the Government to pursue conviction for the "most serious crime that could be proven beyond a reasonable doubt." (Doc. 154 at 2.) The DOJ also directed the Government to pursue statutory enhancements and obtain the most substantial sentence available. (Doc. 151 at 15–16.) Later, the DOJ rescinded this

6

policy and instead directed that charging decisions be "made in the context of an individualized assessment" of the defendant and the facts of the case. (Doc. 153 at 17.) Since this policy change, life sentences have become rare even for defendants convicted of murder. (Doc. 153 at 17–19.)

Under the current DOJ policy, Wing and Arcand likely would not have been charged with first degree murder. (Doc. 154 at 4. ("[T]here is no doubt that the charging policy of the Department of Justice led to the convictions for felony murder.").) The Government's support of Arcand's motion arises in part from the recognition that Wing and Arcand already have served an appropriate sentence for arson resulting in death, rather than first degree murder. (Doc. 154 at 4.) If sentenced today, the Government contends that Wing and Arcand would likely have received a sentence within the advisory Guidelines range of 168–210 months, at most, for arson resulting in death. (Doc. 154 at 4; Doc. 151 at 20.) For defendants convicted of arson and murder in the District of Montana from 2020–2024, the average sentence length is 135 months' imprisonment, and the median sentence length is 140 months' imprisonment. United States Sentencing Commission, Interactive Data Analyzer, https://ida.ussc.gov/analytics/saw.dll?Dashboard, accessed on November 4, 2024, and applying the following filters: Fiscal Years: 2020, 2021, 2022, 2023; District: Montana; Crime Type: Murder, Arson. Wing and

Arcand have served more than 224 months since their sentencing in February 2006, without consideration for good time credit.

Arcand's life imprisonment proves a grossly disparate sentence even for murder when compared to other defendants. For fiscal years 2020–2024, the median sentence length for defendants convicted of murder in the District of Montana was 224 months' imprisonment followed by 5 years' supervised release. United States Sentencing Commission, Interactive Data Analyzer, https://ida.ussc.gov/analytics/saw.dll?Dashboard, accessed on November 4, 2024, and applying the following filters: Fiscal Years: 2020, 2021, 2022, 2023; District: Montana; Crime Type: Murder. Both Wing and Arcand had no appreciable criminal history, resulting in a Level I criminal history category. When this attribute is added to the data provided by the United States Sentencing Commission, the median sentence length drops to 190 months' imprisonment. United States Sentencing Commission, Interactive Data Analyzer, https://ida.ussc.gov/analytics/saw.dll?Dashboard, accessed on November 4, 2024, and applying the following filters: Fiscal Years: 2020, 2021, 2022, 2023; District: Montana; Crime Type: Murder; Criminal History Category: I. The Court finds that the life sentences imposed on Wing and Arcand result in a gross disparity between the sentences they are currently serving and the sentence likely to be imposed today.

This gross disparity exists regardless of whether the operative crime of conviction is first degree murder or arson and murder.

### ii.     Family Circumstances

Section 1B1.13(b)(3)(C) of the USSG provides that extraordinary and compelling reasons exist upon "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." Arcand notes that his grandmother, Karen Arcand, is elderly and requires daily care and attention. (Doc. 153 at 22.) Karen stood in the role of Arcand's parent during his childhood because his parents were alcoholics and unable to take care of him. (Doc. 153 at 22.) Arcand's aunt, Misty Arcand, cannot provide all of Karen's needed care because Misty is aging, suffers from physical limitations, and works daily. (Doc. 153 at 22; Doc. 153-9 at 2.) Karen resides with Misty, and Arcand plans to live with Misty and Karen after his release. (Doc. 153-9 at 2; Doc. 137-1 at 2.)

Karen, Arcand's parental figure, is in her 80s and disabled. (Doc. 153-9 at 2.) The Court finds that Arcand is the only available caregiver because Misty works every day and suffers from the physical limitations of her own aging process. Karen's condition presents an extraordinary and compelling reason to reduce Arcand's sentence.

### iii.   Medical Circumstances

Section 1B1.13(b)(1) outlines when medical circumstances constitute extraordinary and compelling reasons for a sentence reduction. Medical circumstances constitute extraordinary and compelling reasons where the defendant suffers from a serious physical or medical condition that "substantially diminishes the ability of the defendant to provide self-care" and from which the defendant "is not expected to recover." USSG § 1B1.13(b)(1)(B). Extraordinary and compelling reasons also exist where the defendant suffers from a "condition that requires long-term or specialized care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." USSG § 1B1.13(b)(1)(C).

Arcand argues that his medical conditions constitute extraordinary and compelling reasons for a sentence reduction. Arcand points to his skin problems, chest pain, and sciatica. (Doc. 153 at 21.)  These conditions can be managed with adequate medical care, but Arcand argues that the lack of healthcare staff at FCI Sheridan prevents the prison from providing adequate medical care for inmates. (Doc. 153 at 21.)  The Department of Justice issued a report after an inspection of FCI Sheridan in May 2024.  (Doc. 153-6.)  The report revealed that the substantial shortage of Correctional Officers and healthcare workers at FCI Sheridan "created widespread and troubling operational challenges that substantially affect the health,

10

welfare, and safety of employees and inmates." (Doc. 153-6 at 31.) Among these challenges is a significant backlog in medical testing, resulting in delayed diagnosis and treatment of medical conditions. (Doc. 153-6 at 3.) In addition to the lack of medical care within FCI Sheridan, staffing shortages prevented inmates from attending medical appointments with external medical providers in the community. (Doc. 153-6 at 4.)

The Court recognizes that Arcand has raised serious concerns about adequate medical care for inmates at FCI Sheridan. (*See* Doc. 153-6). Arcand has failed to include evidence that Arcand is not expected to recover from his medical conditions. Arcand cannot be expected to prove the extent or severity of his medical problems, however, if FCI Sheridan is unable to provide adequate medical testing and diagnosis in the first place. The presence of "chest pain" is concerning, and the Court will weigh slightly Arcand's medical conditions and the lack of medical care at FCI Sheridan in its consideration of the § 3553(a) factors. Arcand's long sentence and family circumstances already provide extraordinary and compelling reasons to reduce his sentence; the Court need not determine that his medical conditions constitute similarly compelling circumstances.

### iv. Other Reasons

Section 1B1.13(b)(5) of the USSG provides that extraordinary and compelling

reasons may exist when a defendant "presents any other circumstance or combination of circumstances" that are "similar in gravity" to the other enumerated extraordinary and compelling reasons. The Court will consider Arcand's youth at the time of the offense and his rehabilitative strides within the context of the § 3553(a) factors.

### D. Section 3553(a) Factors and Danger Posed by the Defendant

The Court still must determine whether the defendant represents a danger to the safety of others or the community and whether the requested reduction would comport with the § 3553(a) factors. USSG § 1B1.13(a); 18 U.S.C. 3582(c)(1)(A). Section 3553(a) of Title 18 of the United States Code provides:

> The court, in determining the particular sentence to be imposed, shall consider—
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a). The Court also must consider the kinds of sentences available, the need to provide restitution to any victims, the recommended guideline sentence,

any pertinent policy statement, and the need to avoid unwarranted sentence disparities. (*Id.*) Section 3142(g) of Title 18 of the United States Code outlines similar considerations for determining whether someone represents a danger to the safety of others or the community. These factors include the nature and characteristics of the offense and the history and characteristics of the defendant.

Arcand committed a serious offense that resulted in the death of a young woman. Arcand has served more than 18 years in prison, not accounting for good time credit. As discussed above, Arcand has already served an appropriate sentence for such an offense. Adequate punishment has been imposed that reflects the seriousness of Arcand's crime. Adequate deterrence also appears to have been achieved. Arcand does not appear to have reports of misconduct during his imprisonment beyond one infraction for "cell sanitation" in 2013. (Doc. 153 at 23.) Arcand has a low recidivism score. (Doc. 143-1 at 22.) These facts support a conclusion that Arcand does not represent a danger to the community.

Arcand's needs for programming and treatment also appear to have been satisfied. Arcand committed this offense as a young adult, and Arcand is now 40 years old. During his incarceration, Arcand has completed numerous courses including obtaining his GED, a number of college classes, and certificates in mathematics, carpentry, construction, computer skills, electrical, solar installation,

13

and history. (Doc. 153 at 23.) Arcand has participated in drug education programming, anger and stress management, parenting classes, a victim impact program, and criminal thinking. (Doc. 153 at 23.) Arcand has maintained consistent employment through UNICOR and is described as an "outstanding" employee. (Doc. 153 at 23–24.) Arcand has participated extensively as a leader in Native American spiritual and cultural practices, helping to facilitate ceremonies and physical activities such as the Native American Spiritual Run. (Doc. 153 at 24.) Finally, the lack of medical diagnosis and care at FCI Sheridan indicates that Arcand's medical needs would be better addressed in the community. The § 3553(a) factors weigh in favor of granting a sentence reduction.

## CONCLUSION

Arcand has demonstrated that extraordinary and compelling reasons exist for reducing his sentence. Arcand also has shown that he is not a danger to the community and that a reduction of his sentence proves consistent with the § 3553(a) factors. The Court will grant Arcand's motion for compassionate release.

## ORDER

Accordingly, **IT IS ORDERED:**

1. Arcand's motion for compassionate release pursuant to 18 U.S.C. § 3582

(Doc. 153) is **GRANTED**.

2. Pursuant to the original judgment and 18 U.S.C. § 3582(c)(1)(A), the total term of supervised release shall be 5 years.

3. The U.S. Probation Office must verify Arcand's residence and establish a release plan. Appropriate travel arrangements also must be made.

4. Arcand shall be released by 5:00 p.m. on December 2, 2024.

5. The U.S. Probation Office shall review Arcand's conditions of supervised release. If modifications are needed, the U.S. Probation Office should notify the counsel for both parties.

6. Arcand must provide the Court with the complete address where he will reside upon release.

DATED this 27th day of November, 2024.

_____
Brian Morris, Chief District Judge
United State District Court